UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                    Case Number 16-20293

v.                                     Honorable David M. Lawson

TYRONE SAMUEL SMITH, JR.,

                Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Tyrone Smith, who has served about 38 months of his 96-month prison sentence for selling fentanyl-laced heroin, has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  The government concedes that Smith exhausted his administrative remedies and does not dispute his argument that his physical health, coupled with his conditions of confinement at FCI Elkton, where multiple inmates have tested positive for COVID-19, amount to extraordinary and compelling reasons for a sentence reduction under section 3582(c)(1)(A)(i).  However, it argues that Smith is a danger to society if released.  Because Smith has not shown that the factors in 18 U.S.C. § 3553(a) that the Court must consider favor immediate release, the motion will be denied.

I.

From January 2015 to April 2016, Smith conspired with others to distribute over 100 grams of heroin, fentanyl, and acetyl fentanyl.  His distribution resulted in the near-fatal overdoses of

three different customers.  On December 21, 2016, Smith pleaded guilty to a drug distribution conspiracy crime involving heroin, fentanyl, and acetyl fentanyl and was sentenced on May 19, 2017 to 96 months in prison.  He is currently incarcerated at FCI Elkton, a low-security correctional center in Ohio.  His projected release date is April 3, 2024.

On May 23, 2020, Smith submitted a request to the warden of FCI Elkton seeking compassionate release due to the health risks posed by the coronavirus pandemic.  The warden denied his request on May 27.  Smith then filed a *pro se* motion for compassionate release on June 26, 2020.  The Court appointed counsel and the government filed a response to the motion.  Smith's attorney has not filed any supplement or reply to the government's response.

Smith is a 30-year-old African American man who says that he suffers from chronic breathing problems associated with his Asthma.  His medical records reflect that he has asthma, for which he uses albuterol, and obesity based on a body mass index (BMI) of 30.7.  *See Obesity*, Mayo Clinic (Feb. 25, 2020), https://mayocl.in/2PGcZr6 (determining that a person with a BMI of 30.0 BMI or higher obesity).  He also suffers from sciatic back pain.

Smith contends that he behaved well in prison.  He has participated in and has completed several adult continuing education courses including CIN Stress Management and has no incident reports within the past year.  He is severely dyslexic, if not entirely illiterate.  If released, Smith intends to live with Ms. Christina Hicks of Detroit, Michigan, but he offers no explanation of who she is or what the living conditions would be.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'"  *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).  "But that rule comes with a few exceptions, one of which permits compassionate

release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).  Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)).  However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden.  "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf.  To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted).

Under section 3582(c)(1)(A)(i), the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which

does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Smith has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The sentence in this case was driven largely by the seriousness of the offense and the need to protect the public from future crimes by the defendant, evidenced by the sentence substantially above the 60-month mandatory minimum prison term commanded by the statute of conviction. The Court expressed concern that the defendant was willing to sell "poison for profit," which caused the serious injury and near death of three separate customers of the defendant. He distributed dangerous drugs weekly and has a regular clientele. His sentencing guideline range

initially was considerably higher, although it was adjusted downward based on other considerations. Nonetheless, the Court believed that the 96-month sentence was necessary to achieve the goals Congress articulated in section 3553(a). Smith has not demonstrated any prospects for obtaining gainful employment, and his release plan is sketchy at best. There is nothing in this record that suggests that the Court's sentence was greater than necessary to protect the public and provide a just sentence that promotes respect for the law. Consideration of the factors in 18 U.S.C. § 3553(a) does not favor a sentence reduction.

To establish extraordinary and compelling reasons for the relief he requests, Smith points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in

the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

The situation at FCI Elkton certainly is dire, and the government concedes that the outbreak there has been "among the worst" in all federal prisons. The government's position that the defendant is at low or no risk based on prophylactic measures taken by BOP to address the pandemic is not reassuring in the context of the ongoing presence of active infections among inmates there, along with the recent rapid acceleration of the pandemic among the public at large. Moreover, the BOP's admitted failure to implement any comprehensive prophylactic testing program calls into doubt the undoubtedly optimistic figures that it has reported. *Wilson*, 961 F.3d at 849 ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19. At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring); *see also United States v. Campbell*, No. 03-4020, 2020 WL 3491569, at *9 (N.D. Iowa June 26, 2020) ("As of June 23, 2020, no cases of COVID-19 at Yankton FPC had been reported. However, without knowing whether the BOP is actively testing inmates and staff members for COVID-19 at Yankton FPC, the lack of active confirmed cases does not mean COVID-19 is not present at the facility. Nor does it mean there will not be a future outbreak at the facility. As the Government acknowledges, despite extensive measures to prevent transmission, more federal inmates will inevitably contract COVID-19 going forward."). The government's recounting of measures taken

by BOP to address the pandemic also is markedly less impressive in this case considering that those measures demonstrably were ineffective at preventing an outbreak that, so far, has involved more than 1,000 infected inmates and staff, with nine fatalities.

However, Smith is a young man and his comorbidities, although among those identified by the CDC as causing vulnerabilities, are not extreme.  His asthma is under control and he is losing weight.

It is widely recognized and publicly acknowledged that persons with asthma and those who are seriously obese face an increased risk of severe consequences from potential COVID-19 infection.  *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The CDC recognizes "moderate to severe" asthma as a risk factor for COVID-19 infection, but the defendant's medical records do not indicate that his asthma meets either of those criteria.  *See* CDC, Risk Factors: Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also* WedMD: What is Asthma?, https://www.webmd.com/asthma/what-is-asthma ("3. Moderate persistent asthma. Symptoms three to six times a week. Nighttime symptoms three to four times a month. Asthma attacks might affect activities. 4. Severe persistent asthma. Ongoing symptoms both day and night. You have to limit your activities.").  Smith's medical records show am mild form of the condition at most.  On February 4, 2019, his pulmonary exam was clear with no crackles, rhonchi, or wheezing, and his asthma at that point was deemed resolved.  His medication was discontinued.  Examinations in

March and April 2019 similarly were benign.  An April  2019 chest x-ray revealed "no radiographic evidence for an acute cardiopulmonary process."  On May 1, 2020, Smith complained of shortness of breath and wheezing, but the pulmonary exam was clear with no crackles, rhonchi or wheezing, and multiple oxygen saturation readings in 2020 were consistently between 93 and 100%.

The medical records indicate that Smith's BMI is slightly over 30, which qualifies as obese according to the CDC.  Smith did not cite obesity as a reason he would be vulnerable to complications from COVID-19, probably for good reasons.  He reduced his weight to register a BMI of 36.5 in March 2019 to a BMI of 30.7 in February 2020.  He is 30 years old and otherwise relatively healthy.  Despite the government's acknowledgement, the bases Smith cites to establish extraordinary and compelling reasons for a sentence reduction are not persuasive.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons.  But the pandemic is a global phenomenon and some risk is inherent no matter where Smith resides, either at home or in prison.  He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement.  And Michigan has a significant number of confirmed COVID-19 cases.  Although the government has acknowledged that the novel coronavirus can support a finding of "extraordinary and compelling reasons" for medically vulnerable individuals, when the factors in section 3553(a) are "considered," Smith has not shown justification to reduce his sentence to time served.

III.

Smith has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

- 8 -

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 65) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   August 18, 2020